Citation Nr: 1719257 
Decision Date: 05/08/17 Archive Date: 06/06/17

DOCKET NO. 11-33 845 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to service connection for an upper back rib dislocation disorder, to include as secondary to service-connected lumbar spine degenerative joint disease with disc herniation.

2. Entitlement to service connection for a bilateral knee disorder, to include as secondary to service-connected lumbar spine degenerative joint disease with disc herniation.

3. Entitlement to service connection for a left elbow disorder.

4. Entitlement to service connection for a bilateral hand disorder.


REPRESENTATION

Veteran represented by: Colorado Division of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

The Veteran and his friend, D.J.


ATTORNEY FOR THE BOARD

K. Clark, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 2004 to December 2004 and from December 2005 to November 2006, with additional service in the U.S. Marine Corps Reserves with several periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA). 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from December 2010 and July 2011 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado.

In May 2015, the Veteran and his friend, D.J., testified before the undersigned Veterans Law Judge at a video-conference hearing. A transcript of that hearing has been associated with the record. 

In September 2015, the Board remanded the claims on appeal for further development. The case now returns to the Board for further appellate review.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

Although the Board regrets the additional delay, another remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2016). In addition, where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998).

Upper Back Rib Dislocation

The Veteran contends that he has an upper back rib dislocation disorder due to his military service. On his December 2011 VA Form 9, he stated that such disability was the result of an incident during a Marine Corps martial arts program. He further stated that it happened during March 2006 pre-deployment and he has continued to "have problems with the rib popping out." During his May 2015 Board hearing, the Veteran claimed that he had a problem with his rib subluxing due to military service. Specifically, he stated that he believed such was caused by sleeping on cots during service. 

Pursuant to the September 2015 remand, the Veteran was afforded a VA examination to determine the etiology of any current rib dislocation disorder in December 2015. At such time, the examiner diagnosed the Veteran with somatic dysfunction, left 4th rib, and opined that it was less likely than not that such disorder was incurred in or caused by the claimed in-service injury, event, or illness. In this regard, the examiner noted that such disorder was episodic and sporadic, and that the Veteran was not having symptoms at the time of the examination. The examiner further opined that it was at least as likely as not that the current left 4th rib somatic dysfunction was due to the contorted positions in which the Veteran placed himself in the normal course of his work as an automobile mechanic. In support thereof, the examiner explained that bending and twisting motions, and positions that are associated with such type of work, can cause an increased stress on the articulations of the thoracic spine and the associated ribs, resulting in rib subluxation. 

Additionally, the examiner also addressed the July 2015 letter from Dr. B.H., who opined that the Veteran's lumbar spine disorder could be biomechanically related to his rib subluxations. Specifically, the examiner noted that Dr. B.H. addressed some of the objective findings related to the disc conditions in the lumbar spine, but did not provide any objective evidence related to the Veteran's rib subluxation. In other words, the examiner stated that Dr. B.H. did not offer any explanation that would describe the causative relationship that would result in the rib subluxation. 

However, the Board finds that the December 2015 opinion is inadequate to decide the Veteran's claim and, as such, a remand is necessary to obtain an addendum opinion. In this regard, the examiner did not provide a rationale for his opinion that the Veteran's rib disorder was less likely than not incurred in or caused by his service. Rather, he noted that the Veteran was asymptomatic at the time of the examination and opined that such disorder was at least as likely as not due to the Veteran's work as an automobile mechanic. Furthermore, the examiner did not address the Veteran's contentions that his rib disorder was caused either by the March 2006 incident during a Marine Corps marital arts program or as a result of sleeping on cots during service, as directed by the September 2015 remand. Moreover, while the examiner did address the letter from Dr. B.H., he did not opine as to whether the Veteran's rib disorder was caused or aggravated by his service-connected lumbar spine degenerative joint disease with disc herniation. Thus, another opinion is needed to decide the claim for service connection for an upper back rib dislocation disorder, to include as secondary to service-connected lumbar spine degenerative joint disease with disc herniation.

Bilateral Knee Disorder

The Veteran contends that he has a current bilateral knee disorder as the result of his military duties, to include driving and maintaining vehicles. Alternatively, the Veteran contends that he has a bilateral knee disorder due to his service-connected lumbar spine degenerative joint disease with disc herniation. Specifically, at his May 2015 Board hearing, the Veteran testified that he "had more than one person tell [him] now that they think [his knee disorder] is a direct result of [his] body trying to move differently to compensate for the way [his back] feels." 

In September 2015, the Board remanded the Veteran's claim for service connection for a bilateral knee disorder, to include as secondary to his service-connected lumbar spine degenerative joint disease with disc herniation, to afford the Veteran a VA examination to identify all of his bilateral knee disorders and to determine if such disorders were related to his service and/or his service-connected lumbar spine degenerative joint disease with disc herniation. The Board also instructed the examiner to address the Veteran's contentions that his bilateral knee disorder was caused by driving and maintaining vehicles while in service and the aforementioned letter from Dr. B.H., which also indicated that the Veteran's lumbar spine disorder could be biomechanically related to his left knee instability. 

Accordingly, the Veteran underwent a VA examination in December 2015. At such time, the examiner diagnosed the Veteran with bilateral knee patellofemoral pain syndrome, with his left knee causing more symptoms than his right knee and opined that it was less likely than not that such disorder was incurred in or caused by the claimed in-service injury, event, or illness. In support thereof, the examiner noted the Veteran's service treatment records (STRs) did not include any medical documentation of complaints of a knee problem while in service and that the Veteran denied any knee problems in his October 2003 and January 2010 Reports of Medical History. The examiner further explained that as no bilateral knee condition was diagnosed while on active duty or as a member of the Reserves, it was less likely than not that the Veteran's current bilateral knee condition was aggravated by his active duty service or any verified period of ADUTRA. 

Furthermore, the examiner opined that it was less likely than not that the Veteran's service-connected lumbar spine condition caused or aggravated his bilateral knee patellofemoral pain syndrome. Specifically, the examiner noted that the lumbar spine condition was anatomically separate from the biomechanical knee condition. In regard to the July 2015 letter from Dr. B.H., the examiner noted that such doctor did not provide any objective evidence related to the left knee disability and did not offer a diagnosis of the left knee condition. The examiner also explained that Dr. B.H. did not offer any explanation that would describe the causative relationship that would result in the left knee disability. 

Nonetheless, the Board finds that a remand is necessary to obtain an addendum opinion to decide this claim. In this regard, the examiner did not address the Veteran's contention that driving and maintaining vehicles during service caused his bilateral knee disorder, as directed by the September 2015 remand. Furthermore, the examiner provided an inadequate rationale for his opinion that it was less likely than that the Veteran's service-connected lumbar spine condition caused or aggravated his bilateral knee patellofemoral pain syndrome by only stating that the lumbar condition is anatomically separate from the biomechanical knee condition. Therefore, an addendum opinion is needed to address such concerns. 

Left Elbow Disorder

The Veteran contends that he has a left elbow disorder as the result of a fall during Marine boot camp or combat training. He stated that he fell on a rock and his fingers became numb and remained numb for four months until he hit his elbow again. He reported that since such incident, his left elbow has been extremely sensitive to contact and he experiences numbness in his fingers. The Board notes that a January 2010 Report of Medical History indicates that the Veteran reported pain in his elbows during strenuous activity.

In July 2011, the Veteran was afforded a VA examination to determine the nature and etiology of his claimed left elbow disorder. The Veteran reported that he injured his elbow in boot camp when he fell on a rock. He stated that his left hand digits three, four, and five became numb and tingling, which lasted for approximately six months. X-rays revealed minimal degenerative changes around the olecranon. The examiner diagnosed the Veteran with left medial epicondylitis with impingement. The examiner opined that the Veteran's left elbow condition was less likely as not caused by or a result of military service. The rationale was that the Veteran's September 2007 military examination report indicated that there were no deficits in the upper extremities, strength was equal, and there were no complaints of pain. The examiner also stated that the medical examination in May 2010 did not identify any concerns with elbow pain or numbness or tingling of the fingers. 

In its September 2015 remand, the Board found that the July 2011 opinion was inadequate since the examiner did not fully consider the evidence of record and remanded for an addendum opinion. In this regard, the Board directed the examiner to address the aforementioned January 2010 Report of Medical History and to clarify whether the July 2011 VA examiner was referencing a May 2010 or September 2010 examination, since the Veteran had a medical examination in September 2010, not May 2010. 

Thereafter, in November 2016, the Veteran was afforded another VA examination and an addendum opinion was provided to determine the etiology of his left elbow disorder. However, the examiner found that there was insufficient evidence/clinical information to support a current left elbow diagnosis or chronic disability of the left elbow. Specifically, the examiner noted that the Veteran's diagnosis of left medial epicondylitis with impingement from the July 2011 VA examination was acute and resolved, and that the Veteran reported that he no longer had left elbow problems or symptoms for the past several years. She also noted that the one mention of elbow pain in the January 2010 Report of Medical History was nonspecific for a pathological diagnosis. The examiner further explained that, since the Veteran did not complete nerve conduction testing ordered in 2011 and that he had no visits regarding his left elbow to a medical provider before or after his July 2011 VA examination, such demonstrated a lack of chronicity of care and concern related to his left elbow. 

The Board finds that the November 2016 addendum opinion is inadequate and that a remand is necessary to obtain another opinion. In this regard, the November 2016 examiner determined that the Veteran did not have a current disability regarding his left elbow. However, the Veteran was diagnosed with left medial epicondylitis with impingement at the July 2011 VA examination and, thus, has a current disability for a left elbow disorder for the purposes of the adjudication of his claim, regardless of whether it subsequently resolved. Furthermore, the examiner noted that she reviewed the May 2010 information, but it is still unclear what this information entails, since the Veteran was provided an examination in September 2010 and not May 2010. Thus, an addendum opinion is needed to determine whether the Veteran's diagnosed left medial epicondylitis with impingement is related to his military service, to include his fall during boot camp or combat training. 

Bilateral Hand Disorder

The Veteran contends that he has weakness in his hands as a result of military service. The Board notes that a January 2010 Report of Medical History states, "[p]ain in wrist varies, gripping." He also reported that he had tingling in his right arm and occasional numbness. On his December 2011 VA Form 9, the Veteran reported that he has had problems with his hands since military service. Furthermore, at the May 2015 Board hearing, the Veteran testified that he was told he had nerve damage in his left hand by someone at a VA clinic. 

Pursuant to the September 2015 remand, the Veteran was afforded a VA examination in December 2015 to identify all bilateral hand disorders and to determine if such disorders were related to service. At such time, the examiner determined that there was insufficient clinical evidence to support a diagnosis of a bilateral hand condition. However, the Board notes that the Veteran had documented service in Southwest Asia in Iraq during the Persian Gulf War. Therefore, service connection may also be established under 38 C.F.R. § 3.317, which provides that service connection may be warranted for a Persian Gulf War Veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval, or air service in the Southwest Asia theater of operations, or to a degree of 10 percent or more not later than December 31, 2021; and by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 C.F.R. § 3.317.

For purposes of 38 C.F.R. § 3.317, there are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi-symptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C.A § 1117 (d) warrants a presumption of service connection. 38 U.S.C.A § 1117.

Signs or symptoms that may be manifestations of undiagnosed illness or medically unexplained chronic multi-symptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; 
(7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317 (b).

The Board notes that the record reveals that the Veteran has had bilateral hand weakness, numbness, and tingling that have not been attributed to a known clinical diagnosis. Further, while the December 2015 VA examiner indicated that the Veteran did not have a diagnosable bilateral hand condition, he did not consider the provisions related to an undiagnosed illness or other qualifying chronic disability. Therefore, a remand is warranted in order to obtain an addendum opinion that addresses such theory of entitlement. 

All Claims

The record indicates that there may be outstanding treatment records. Specifically, at the November 2016 VA examination, the Veteran reported that he was currently being treated at a VA facility. Thus, on remand, he should be given an opportunity to identify any additional outstanding records and, thereafter, all identified records should be obtained, to include updated VA treatment records.

Lastly, in its September 2015 remand, the Board directed the AOJ to provide the Veteran with proper notice under the Veterans Claims Assistance Act of 2000 (VCAA) regarding the evidence and information necessary to substantiate his claims of entitlement to service connection for an upper back rib dislocation disorder and bilateral knee disorder as secondary to his service-connected lumbar spine degenerative joint disease with disc herniation. A review of the record indicates that such has not been completed. Therefore, on remand, the Veteran should be provided with proper VCAA notice regarding secondary service connection.

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be provided with proper VCAA notice regarding the evidence and information necessary to substantiate his claims of entitlement to service connection for an upper back rib dislocation disorder and bilateral knee disorder as secondary to his service-connected lumbar spine degenerative joint disease with disc herniation.

2. The Veteran should be given an opportunity to identify any outstanding private or VA treatment records relevant to his claims on appeal. After obtaining any necessary authorization from the Veteran, all outstanding records, to include any VA treatment records, should be obtained.

For private treatment records, make at least two (2) attempts to obtain records from any identified sources. If any such records are unavailable, inform the Veteran and afford him an opportunity to submit any copies in his possession.

For federal records, all reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).

3. After all records have been associated with the record, return the record to the VA examiner who conducted the December 2015 back/rib examination. The record and a copy of this Remand must be made available to the examiner. The examiner should note in the examination report that the record and the Remand have been reviewed. If the December 2015 VA examiner is not available, the record should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

(A) After a review of the entire record, the examiner should provide an opinion as to whether the Veteran's upper back rib dislocation disorder, diagnosed as somatic dysfunction, left 4th rib, is at least as least as likely as not (i.e., a 50 percent probability or greater) caused or aggravated by the Veteran's active duty service or any verified period of ACDUTRA. The examiner should specifically address the Veteran's claim that such disability was caused either by an incident in March 2006 during a Marine Corps martial arts program, or as a result of sleeping on cots during active duty service. 

(B) The examiner should also opine as to whether any diagnosed upper back rib dislocation disorder is at least as likely as not (i.e., a 50 percent probability or greater) caused OR aggravated by the Veteran's lumbar spine degenerative joint disease with disc herniation. In this regard, the examiner should specifically address the July 2015 opinion by Dr. B.H. indicating that the Veteran's lumbar spine disorder could be biomechanically related to his rib subluxations.

The examiner is advised that the sole basis of a negative opinion cannot be the fact that the Veteran's service treatment records are silent as to any upper back rib dislocation injury or disorder.

A complete rationale should be provided for all opinions given.

4. After all records have been associated with the record, return the record to the VA examiner who conducted the December 2015 bilateral knee examination. The record and a copy of this Remand must be made available to the examiner. The examiner should note in the examination report that the record and the Remand have been reviewed. If the December 2015 VA examiner is not available, the record should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

(A) After a review of the entire record, the examiner should provide an opinion as to whether the Veteran's bilateral knee disorder, diagnosed as bilateral knee patellofemoral pain syndrome, is at least as least as likely as not (i.e., a 50 percent probability or greater) caused or aggravated by the Veteran's active duty service or any verified period of ACDUTRA. The examiner should specifically address the Veteran's claim that such disability was caused by driving and maintaining vehicles while in service.

(B) The examiner should also opine as to whether any diagnosed bilateral knee disorder is at least as likely as not (i.e., a 50 percent probability or greater) caused OR aggravated by the Veteran's lumbar spine degenerative joint disease with disc herniation. In this regard, the examiner should specifically address the July 2015 opinion by Dr. B.H. indicating that the Veteran's lumbar spine disorder could be biomechanically related to his left knee instability.

The examiner is advised that the sole basis of a negative opinion cannot be the fact that the Veteran's service treatment records are silent as to any bilateral knee injury or disorder.

A complete rationale should be provided for all opinions given.

5. After all records have been associated with the record, return the record to the VA examiner who conducted the November 2016 left elbow examination. The record and a copy of this Remand must be made available to the examiner. The examiner should note in the examination report that the record and the Remand have been reviewed. If the November 2016 VA examiner is not available, the record should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

The examiner should provide an opinion as to whether the Veteran's left elbow disorder, diagnosed as left medial epicondylitis, is at least as least as likely as not (i.e., a 50 percent probability or greater) caused or aggravated by the Veteran's active duty service or any verified period of ACDUTRA. The examiner should specifically address the Veteran's claim that his left elbow disorder was caused by a fall during Marine boot camp or combat training, as well as the January 2010 Report of Medical History, indicating that the Veteran reported pain in his elbows during strenuous activity. The examiner should also clarify whether an examination report dated in May 2010 or September 2010, was reviewed.

In this regard, while the Veteran did not have a left elbow disorder at the time of the November 2016 VA examination, the examiner is advised that s/he should accept as fact that the Veteran has a diagnosis of left medial epicondylitis for the purposes of the adjudication of his claim.

A complete rationale should be provided for all opinions given.

5. After all records have been associated with the record, return the record to the VA examiner who conducted the December 2015 bilateral hand examination. The record and a copy of this Remand must be made available to the examiner. The examiner should note in the examination report that the record and the Remand have been reviewed. If the December 2015 VA examiner is not available, the record should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

(A) The examiner should note and detail all reported symptoms of the Veteran's bilateral hands. 

(B) The examiner should specifically state whether the Veteran's bilateral hand complaints, to include weakness, numbness, and tingling of the right and left hand, are attributed to a known clinical diagnosis. 

(C) If any symptoms of a bilateral hand disorder have not been determined to be associated with a known clinical diagnosis, the examiner should indicate whether the Veteran has objective indications of a chronic disability resulting from an undiagnosed illness, as established by history, physical examination, and laboratory tests, that has either (1) existed for 6 months or more, or (2) exhibited intermittent episodes of improvement and worsening over a 6-month period. 

(D) The examiner should offer an opinion as to whether it is at least as likely as not that the Veteran's bilateral hand disorder and/or symptoms represent a "medically unexplained chronic multisymptom illness." Such is defined as a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities.

(E) For each diagnosed bilateral hand disorder, the examiner should render an opinion as to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that such disorder was caused or aggravated by the Veteran's active duty service or any verified period of ACDUTRA. 

In rendering the requested opinions, the examiner should consider and discuss all relevant evidence, to include medical documents, and all lay assertions. A rationale for any opinion offered should be provided. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what additional evidence (if any) would be necessary before an opinion could be rendered.

6. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of this case. The Veteran need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).





These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).